UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

THE CHOICE IS YOURS, INC. et al.,      :
      :
      Plaintiffs,      :
      v.      :      No. 2:14-cv-01804
      :
THE CHOICE IS YOURS et al.,      :
      :
      Defendants.      :

———————————————————————

**<u>MEMORANDUM OPINION</u>**

**Joseph F. Leeson, Jr.**                                  **September 21, 2015**
**United States District Judge**

## I.    Introduction

Presently before the Court are two partial motions to dismiss Plaintiffs' Amended Complaint, filed on behalf of two respective groups of Defendants to this action. Defendants The Choice Is Yours, District Attorney Seth Williams, and the Philadelphia District Attorney's Office ("District Attorney Defendants") seek the dismissal of (i) all claims against Defendants The Choice Is Yours and the Philadelphia District Attorney's Office, because these Defendants "are not entities that can be sued," (ii) Count I of Plaintiffs' Amended Complaint, seeking redress for "Fraud on the Public by an Elected Official and Office," which the District Attorney Defendants contend is not a valid cause of action, (iii) all claims against District Attorney Williams sounding in state tort law, because these claims are barred by the doctrines of municipal immunity and high public official immunity, (iv) Plaintiffs' demand for punitive damages against District Attorney Williams in his official capacity, because this demand is barred by the doctrine of municipal immunity, (v) Count IV of Plaintiffs' Amended Complaint, which seeks redress for

violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as asserted against District Attorney Williams in his official capacity, because this claim is barred by municipal immunity, and (vi) Count IX of Plaintiffs' Amended Complaint, which seeks redress for "Misappropriation of Name and Likeness," because Plaintiffs have failed to state a viable claim under this theory of liability. See Mem. Supp. District Attorney Defs.' Mot. Dismiss Pls.' Am. Compl. 1-2, ECF No. 96.

Defendants City of Philadelphia, City Solicitor Shelley Smith, and the Philadelphia Law Department ("City Defendants") also seek the dismissal of various aspects of Plaintiffs' Amended Complaint. After the City Defendants filed their motion, Plaintiffs filed a motion to voluntarily dismiss, among other parties, Defendants Smith and the Philadelphia Law Department, which the Court granted on June 17, 2015. Therefore, the only remaining City Defendant is the City of Philadelphia, and as a result, the portions of the City Defendants' motion that relate solely to Defendants Smith and the Philadelphia Law Department are moot. Defendant City of Philadelphia seeks the dismissal of (i) all claims sounding in state tort law, because these claims are barred by municipal immunity, (ii) Plaintiffs' demand for punitive damages, because this demand is barred municipal immunity, (iii) Count IV of Plaintiffs' Amended Complaint, which seeks redress for violations of RICO, because this claim is barred by municipal immunity, and (iv) Count IX of Plaintiffs' Amended Complaint, which seeks redress for "Misappropriation of Name and Likeness," because Plaintiffs have failed to state a viable claim under this theory of liability. See Mem. Supp. City Defs.' Mot. Dismiss Pls.' Am. Compl. 1-2, ECF No. 97.

For the reasons that follow, the Court grants the respective motions of both the District Attorney Defendants and the City of Philadelphia, the sole remaining City Defendant.

## II.   Factual Background[1]

Plaintiff James Smallwood is the founder and chief executive officer of Plaintiff The Choice Is Yours, Inc., a non-profit organization that "trains mainly minority ex-convicts and other at-risk individuals for work in the construction trades . . . while teaching reading, math, and job-hunting skills." Am. Compl. ¶¶ 24-32. Plaintiff Smallwood himself was formerly homeless and suffered from addiction. Id. ¶ 26. As a result of his experience at a rehabilitation center, he decided to dedicate his life to helping others, which led him to found The Choice Is Yours in 1997. Id. ¶¶ 26-29. Since that time, over six hundred "ex-convicts, drug addicts, and homeless people" have participated in the program offered by The Choice Is Yours, Inc. Id. ¶ 36.

Plaintiffs' complaint, which asserts claims of trademark infringement, unfair competition, fraud, RICO violations, and other claims under Pennsylvania law, arises out of the creation of a program called "The Choice is Yours" by Defendant Williams, the District Attorney for the City of Philadelphia. Am. Compl. ¶¶ 7-8, 11. Announced on March 21, 2012, the program was an "alternative-to-incarceration" program that "offere[d] nonviolent felony drug offenders a chance to avoid prison sentences and instead receive education and workforce training, along with social services and supports." Am. Compl. Ex. 3, at 1, ECF No. 55-4. The program was modeled after "reentry and alternative sentencing programs across the country, particularly the Back on Track program in San Francisco." Id. At the time of the program's debut, donations from The Lenfest and William Penn Foundations funded the entirety of the program's expenses. Id. Approximately two years after the introduction of the program, the program was discontinued. See id. ¶ 115.

---

[1]      The following facts are taken from Plaintiffs' Amended Complaint, which, comprising 353 numbered paragraphs spanning seventy pages (in no fewer than three typefaces) and featuring sensationalized subheadings such as "The Heist" and "The Sitdown and Cover Up," bears little resemblance to the "short and plain statement" contemplated by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(a).

Plaintiffs' contend that the program launched by District Attorney Williams contained many similarities to the program run by Plaintiff Smallwood, see id. ¶ 23, and that District Attorney Williams in fact "stole" Plaintiff Smallwood's program, "shamelessly and falsely representing to the public that he was the founder and creator of an innovative diversionary program named 'The Choice is Yours,'" id. ¶ 7. On March 21, 2014, Plaintiffs initiated this action, seeking damages and other relief under various theories. The District Attorney Defendants and the City Defendants each filed motions to dismiss Plaintiffs' Amended Complaint.

### III.    Legal standard – motion to dismiss for failure to state a claim

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). This Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). While Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing Twombly, 550 U.S. at 555)); see Fed. R. Civ. P. 8(a)(2). For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d 224, 232 (citing Twombly, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555). This is because Rule 8(a)(2) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'" See id., 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)). "Detailed factual allegations" are not required, id. at 678

(quoting Twombly, 550 U.S. at 555), but a claim must be "nudged . . . across the line from

conceivable to plausible," id. at 680 (quoting Twombly, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,'" but there must be

"more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting

Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement

to relief."'" Id. (quoting Twombly, 550 U.S. at 557)).

## IV.  Plaintiffs did not oppose certain aspects of Defendants' respective motions, and Defendants' motions are granted in those respects.

Plaintiffs' opposition to Defendants' respective motions fails to address certain aspects of

those motions, and Defendants' motions are granted in those respects as unopposed. See E.D. Pa.

Local R. Civ. P. 7.1(c); Celestial Cmty. Dev. Corp. v. City of Phila., 901 F. Supp. 2d 566, 578

(E.D. Pa. 2012) ("To put it simply: plaintiffs who fail to brief their opposition to portions of

motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as

uncontested."). Specifically, the District Attorney Defendants' motion to dismiss (i) all claims

against Defendants The Choice is Yours and the Philadelphia District Attorney's Office, because

those Defendants do not have a separate corporate existence and are not capable of being sued,

and (ii) Count I of Plaintiffs' Amended Complaint, which seeks redress for "Fraud on the Public

by an Elected Official and Office," which Defendants contend is not a valid cause of action, is

granted in both respects.

Both District Attorney Williams, the remaining District Attorney Defendant, and the City

of Philadelphia are also entitled to the dismissal of Count IX of Plaintiffs' Amended Complaint,

which seeks redress for "Misappropriation of Name and Likeness," to the extent that this claim is asserted by Plaintiff The Choice Is Yours, Inc. Defendants contend that this claim can be asserted only by a "living individual," which The Choice Is Yours, Inc. is not. Plaintiffs do not respond to this argument, other than to state that "[e]ven if this [contention] is true, plaintiff James Smallwood has adequately pled a valid cause of action" under this theory of liability. <u>See</u> Pls.' Resp. Opp'n District Attorney Defs.' Mot. Dismiss 17 n.17, ECF No. 98; Pls.' Resp. Opp'n City Defs.' Mot. Dismiss 13, ECF No. 99. Count IX of Plaintiffs' Amended Complaint is therefore dismissed with respect to Plaintiff The Choice Is Yours, Inc.

**V.    Plaintiff Smallwood fails to state a claim for "Misappropriation of Name and Likeness."**

District Attorney Williams and the City of Philadelphia challenge whether Plaintiff Smallwood has adequately pled a valid cause of action for "Misappropriation of Name and Likeness." Plaintiff Smallwood claims that Defendants' use of the name of the organization that he founded, "The Choice is Yours," supplies him with this claim, because "[a]ny individual familiar with . . . The Choice is Yours would immediately identify that name with James Smallwood." <u>See</u> Am. Compl. ¶ 311.

Initially, there is some question as to the proper basis under Pennsylvania law for a claim of misappropriation of identity. Plaintiffs' Amended Complaint invokes section 652C of the Second Restatement of Torts, in an apparent attempt to state a claim under Pennsylvania's common law right of action for invasion of privacy by appropriation of name or likeness. <u>See</u> <u>Lewis v. Marriott Int'l, Inc.</u>, 527 F. Supp. 2d 422, 429 (E.D. Pa. 2007) (citing <u>Vogel v. W.T. Grant Co.</u>, 327 A.2d 133 (Pa. 1974)); <u>Worthy v. Carroll</u>, No. 02-6882, 2003 WL 25706359, at *4 (E.D. Pa. July 16, 2003) ("[T]he Supreme Court of Pennsylvania has generally applied the <u>Restatement (Second) of Torts</u> to privacy torts . . . ."). "The Pennsylvania Supreme Court has

expressly recognized a cause of action for 'invasion of privacy' by 'appropriation of name or likeness.'" Lewis, 527 F. Supp. 2d at 429 (citing Vogel, 327 A.2d 133). However, one court in this district concluded that Pennsylvania's "unauthorized use of name or likeness" statute, which was enacted in 2002, has "subsumed" the common law cause of action for misappropriation of identity. See 42 Pa. Cons. Stat. Ann. § 8316 (West 2007); Facenda v. N.F.L. Films, Inc., 488 F. Supp. 2d 491, 514 (E.D. Pa. 2007), affirmed in part and vacated in part, 542 F.3d 1007 (3d Cir. 2008). On appeal, the United States Court of Appeals for the Third Circuit, in dicta, appeared to concur in that assessment. See Facenda, 542 F.3d at 1013 n.2 (suggesting that the plaintiff may have abandoned its common law claim for invasion of privacy "possibly because, as the District Court stated, Pennsylvania's right-of-publicity statute subsumed the common-law tort of invasion of privacy"). By contrast, another court in this district, relying upon a rule of statutory construction that "statutes are not presumed to make changes in the rules and principles of common law or prior existing law beyond what is expressly declared in their provisions," concluded the opposite, expressing reluctance to do away with a common law cause of action that the Pennsylvania Supreme Court has expressly recognized. See Lewis, 527 F. Supp. 2d at 429.

The status of the law of Pennsylvania in this regard does not affect the Court's conclusion: Plaintiff has failed to state the claim. Considering first section 8316, a "natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose[2] without the written consent of such natural person" may bring a claim under the statute for unauthorized use of name or likeness. See 42 Pa. Cons. Stat. Ann. § 8316(a). The phrase "name or likeness" is defined by the statute as "[a]ny attribute of a natural person that

---

[2]     The phrase "commercial or advertising purpose" includes the use of a name or likeness in connection with the offering for sale or sale of product or service, for the purpose of advertising or promoting products or services of a business, or for the purpose of fundraising. See 42 Cons. Stat. Ann. § 8316(e)(1).

serves to identify that natural person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice or a substantially similar imitation of one or more thereof." See id. § 8316(e)(2). Plaintiff Smallwood's contention that Defendants appropriated his name or likeness because "[a]ny individual familiar with . . . The Choice is Yours would immediately identify that name with James Smallwood" cannot be squared with the statute.

The statute provides for relief where a natural person's "name or likeness" is used without consent, and the phrase is defined as "any attribute of a natural person that serves to identify that person to an ordinary, reasonable viewer or listener." In common parlance, an "attribute" is a "quality or character ascribed to any person or thing, one which is in common estimation or usage assigned to him." attribute, n., OED Online, http://www.oed.com/view/ Entry/12931 (last updated March 2015). The examples of attributes the statute provides—a name, signature, photograph, image, likeness, or voice—reinforce that the statute uses the term "attribute" in its ordinary sense. Here, Plaintiff Smallwood complains of the misuse of a name of an organization that has an association with him, not the misuse of an attribute of him. The name of Plaintiff Smallwood's organization is not akin to his name, or his image, or his likeness; it is not one of his qualities or characteristics.

The allegations in Plaintiffs' Amended Complaint also reveal that Plaintiff Smallwood does not allege that "The Choice is Yours" identifies him, as section 8316 requires. Plaintiffs allege that a person familiar with the name "The Choice is Yours" would "immediately identify that name with James Smallwood." See Am. Compl. ¶ 311 (emphasis added). That may be true, and for the present purposes the Court assumes that it is. But while the name of Plaintiff Smallwood's organization may be identified with him or evoke him in the minds of others, it is

not an attribute of Plaintiff Smallwood that identifies him.  A person who hears the name "The Choice is Yours" may think, "That's James Smallwood's organization." That person would not think, "That's James Smallwood."

Plaintiff Smallwood fares no better under the principles set forth in section 652C of the Second Restatement of Torts. Under this section of the Restatement, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." See Restatement (Second) of Torts § 652C (Am. Law. Inst. 1977). While section 652C of the Restatement may differ from section 8316 in some respects, such as whether the misappropriation must be done for a commercial purpose to give rise to a claim for relief, see AFL Phila. LLC. v. Krause, 639 F. Supp. 2d 512, 531 (E.D. Pa. 2009), section 652C of the Restatement, like section 8316, is limited to a misappropriation of one's "name or likeness" that interferes with the exclusive use of one's identity. See id. cmt. a ("The interest protected by the rule stated in this Section is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness . . . .").

For support, Plaintiff turns to the decision of another court in this district, where a plaintiff sought relief for the alleged misuse of a photograph that contained a watermark with the text "PhillySkyline.com." See Maule v. Williams, No. 13-4428, slip op. at 1 (E.D. Pa. Jan. 23, 2014). The plaintiff alleged that he was a performer known as "PhillySkyline.com," and that when a person sees that domain name, the person interprets that name as the plaintiff's name. The court "accept[ed] his allegation that there has been an appropriation of his 'performer' name," and denied the defendant's motion to dismiss the claim. See id. at 1 n.1. That case, however, is simply one of many to recognize that a nickname or a persona is entitled to protection against misappropriation in the same way that a person's given name is entitled to

protection. When a person has become "so inextricably identified" with another name such that the person's own identity would be invoked by the other name, the person may assert a claim for misappropriation of that name. See McFarland v. Miller, 14 F.3d 912 (3d Cir. 1994) (holding that the estate of James McFarland could sustain a claim for misappropriation based on a restaurant's use of the name "Spanky McFarland's"); Hirsch v. S.C. Johnson & Son, Inc., 280 N.W.2d 129, 137 (Wis. 1979) ("The fact that the name, "Crazylegs," used by [defendant], was a nickname rather than [Elroy] Hirsch's actual name does not preclude a cause of action. All that is required is that the name clearly identify the wronged person."). If an alter ego is sufficiently well known, that name may identify a person in the same way as the person's given name and is thus entitled to the same protection. See William L. Prosser, Privacy, 48 Cal. L. Rev. 383, 404 n.174 (1960) ("The suggestion, for example, that Samuel L. Clemens would have a cause of action when that name was used in advertising, but not for the use of 'Mark Twain,' fully speaks for itself.").

Plaintiff Smallwood does not allege that he goes by the name of "The Choice is Yours" or that this name otherwise serves as an identifier of him as a person. Accordingly, he has failed to state a claim for misappropriation of name or likeness, and Defendants' respective motions to dismiss this claim are granted.[3]

## VI.    District Attorney Williams is immune to Plaintiffs' tort claims under the doctrine of high public official immunity.

District Attorney Williams contends that, as the District Attorney for the City of Philadelphia, he is immune to suit under state tort law pursuant to the doctrine of high public official immunity. Under Pennsylvania law, "high public officials are immune from suits seeking

---

[3]    Even if Plaintiff Smallwood successfully stated a claim for relief under this theory of liability, both the City of Philadelphia and District Attorney Williams would be entitled to immunity to the claim for the reasons discussed infra in sections VI-VII.

damages for actions taken or statements made in the course of their official duties,"[4] see Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001), and district attorneys are deemed to be "high public officials," see id. at 70. This immunity defeats claims arising out of actions "taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction." See id. at 69 (quoting Matson v. Margiotti, 88 A.2d 892, 895 (1952)). But "given the great potential for harm, the privilege must be limited to those statements and actions with are in fact 'closely related' to the performance of those official duties." See McCormick v. Specter, 275 A.2d 688, 689 (Pa. Super. Ct. 1971).

Plaintiffs contend that District Attorney Williams is not entitled to this immunity because he was not acting within the scope of his duties during his alleged involvement in the selection of the name "The Choice is Yours" for the City's alternative-to-incarceration program or in the design and operation of the program. Plaintiffs argue that the creation and operation of the program was outside of the scope of his official duties because the program "was allegedly developed by defendant P/PV, a private organization, with [District Attorney] Seth Williams," funding for the program came from private donations, and the program was allegedly "run by private organizations such as JEVS Human Services (a religious organization), the Center for Literacy, and the Pennsylvania Prison Society." See Pls.' Br. Opp'n District Attorney Defs.' Mot. Dismiss 7. Plaintiffs assert that the District Attorney's program is "a private rehabilitation program for young Black and Hispanic men who are prone to crime—essentially a private social

---

[4]      While the doctrine of high public immunity originated as a protection against suit for the tort of defamation, the Pennsylvania Supreme Court long ago dispelled the notion that the immunity is limited to that tort. See Erb. v. Borough of Catawissa, No. 3:CV-07-1961, 2009 WL 3182005, at *10 (M.D. Pa. Sept. 30, 2009) (citing Jonnett v. Bodick, 244 A.2d 751, 753 (Pa. 1968)). Accordingly, the doctrine has been applied to a variety of claims, such as malicious prosecution, abuse of criminal process, and conspiracy, see Douris v. Schweiker, 229 F. Supp. 2d 391, 403 (E.D. Pa. 2002), tortious interference with contractual relations, see Cornell Cos., Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 275 (E.D. Pa. 2007) (citing Osiris Enters. v. Borough of Whitehall, 877 A.2d 560, 567 (Pa. Commw. Ct. 2005)), and intentional infliction of emotional distress and invasion of privacy, see Smith v. Sch. Dist. of Phila., 112 F. Supp. 417, 426 (E.D. Pa. 2000).

works project" that is "perhaps more accurately characterized as a social experiment, or a pilot program, to drive [District Attorney Williams's] political aspirations and soften his image as a prosecutor for future elections," which means that, to Plaintiffs, the program does not relate to District Attorney Williams's "role as chief prosecutor."

Plaintiffs' arguments, however, fail to acknowledge the defining characteristic of the District Attorney's program: it provided "nonviolent felony drug offenders a chance to avoid prison sentences and instead receive education and workforce training, along with social services and supports." See Am. Compl. Ex. 3, at 1. The program offered participants an opportunity that only the District Attorney, by virtue of the authority vested in him as the chief prosecutor for City of Philadelphia, could provide: an alternative to incarceration. See id. at 1-2. While Plaintiffs' present characterization of the program as a "private social works project" and a "social experiment" overlooks this salient feature of the program, Plaintiffs acknowledged this facet of the program in their Amended Complaint. Plaintiffs alleged that, by contrast to Plaintiff Smallwood's organization, the District Attorney's program "[was] able, solely by virtue of its governmental authority, to offer participants a chance to avoid a criminal record." See Am. Compl. ¶ 8 (emphasis Plaintiffs'). Plaintiffs' themselves thus made the observation critical to the question of whether District Attorney Williams was acting within the scope of his duties. The program was a creature of the prosecutorial discretion that is vested in the District Attorney's office, and this observation necessarily leads to the conclusion that District Attorney Williams was acting "in the course of [his] duties or powers and within the scope of his authority" in the creation and operation of the program. See Durham, 772 A.2d at 69 (quoting Matson, 88 A.2d at 895).

Plaintiffs also take too narrow a view of a district attorney's role. To Plaintiffs, "a district attorney's actual job—the one to which he is elected and afforded immunity—is to investigate and prosecute crime." See Pls.' Br. Opp'n District Attorney Defs. Mot. Dismiss 22. But as Plaintiffs themselves observe elsewhere in their brief, a district attorney is the "final policymaker on law enforcement issues for the City." See id. at 5 (quoting Carter v. City of Phila., 181 F.3d 339, 353 n.46 (3d Cir. 1999)). The traditional view of prosecutors as "case processors who, exercising a fair amount of discretion, moved offenders through the criminal justice system from arrest to incarceration," see Charles J. Hynes, The Evolving Prosecutor: Broadening the Vision, Expanding the Role, Crim. Just., Fall 2009, at 40, 40, has given way to a broader view of the prosecutor's role that combines the use of "traditional tools for crime reduction: investigation, prosecution, conviction," with new techniques of "diversion, collaboration, community participation, and research-based innovation," see id. at 41. This expanded view of the role of the prosecutor derives from recognition of the "authority they wield in the criminal justice system," which enables them to implement techniques like "diversion, restorative justice, problem-solving courts, alternatives to incarceration, and re-entry." See Roger A. Fairfax, Jr., The "Smart on Crime" Prosecutor, 25 Geo. J. Legal Ethics 905, 912 (Fall 2012). The fact that creation and implementation of The Choice is Yours program did not involve the traditional tools of "investigation and prosecution" does not mean that the program was outside of District Attorney Williams's jurisdiction. Rather, the program, as described in the press release attached as an exhibit to Plaintiffs' Amended Complaint, was one of many "innovative programs across the country" that have attempted to address "the practical realities of recidivism" through methods such as treatment diversion for drug-addicted offenders or vocational training; programs which recognize that "crime is often a last resort for those with little in the way of education or job

skills." See Kamala D. Harris, Symposium: Smart on Crime—Foreword, 8 Harv. L. & Pol'y

Rev. 255, 258 (Summer 2014) (describing Attorney General Harris's "Back on Track" program,

which she established during her tenure as District Attorney of San Francisco and which served

as a model for District Attorney Williams's program).

Based on the allegations in Plaintiffs' Amended Complaint, the creation and

implementation of The Choice is Yours program was taken in the course of District Attorney's

Williams powers and duties and was within the scope of his authority. See Durham, 772 A.2d at

69 (quoting Matson, 88 A.2d at 895). Accordingly, District Attorney Williams is entitled to

immunity to Plaintiffs' state tort law claims.

**VII.    The City of Philadelphia is entitled to immunity to Plaintiffs' state tort law claims.**

The City of Philadelphia seeks to dismiss Plaintiffs' state tort claims—specifically claims

of fraud, civil conspiracy, and misappropriation of ideas[5]—as barred by the immunity conferred

on the City under Pennsylvania's Political Subdivision Torts Claims Act. See 42 Pa. Cons. Stat.

Ann. § 8541 (West 2007). Under the Tort Claims Act, local agencies such as the City of

Philadelphia are "generally not liable 'for any damages on account of any injury to a person or

property caused by any act of the local agency or an employee thereof,'" subject to eight

enumerated exceptions for certain negligent acts. See 42 Pa. Cons. Stat. §§ 8541, 8542(b); Spiker

v. Whittaker, 553 F. App'x 275, 281 n.6 (3d Cir. 2014); Jewell v. Ridley Twp., 497 F. App'x

182, 186-87 (3d Cir. 2012). Thus, the Tort Claims Act "shields local government entities from

liability for the intentional torts of their employees." Panas v. City of Phila., 871 F. Supp. 2d 370,

375-76 (E.D. Pa. 2012) (citing Thomas v. Cianfrani, No. 01-3096, 2009 WL 1704471, at *4-5

---

[5]    Plaintiffs' Amended Complaint does not explain the legal basis for this claim, but under Pennsylvania law a claim for "misappropriation of an idea" is generally recognized as a tort with two elements: "(1) the plaintiff had an idea that was novel and concrete and (2) the idea was misappropriated by the defendant." See Eagle v. Moran, No. 11-4303, 2011 WL 6739448, at *13 (E.D. Pa. Dec. 22, 2011) (citing Blackmon v. Iverson, 324 F. Supp. 2d 602, 607 (E.D. Pa. 2003)).

(E.D. Pa. June 17, 2009)). The torts of fraud, civil conspiracy, and misappropriation of ideas are intentional torts, and Plaintiffs' claims against the City under these theories of liability are therefore barred by the Tort Claims Act. See Egli v. Strimel, No. 14-6204, 2015 WL 5093048, at *6 (E.D. Pa. Aug. 28, 2015) (holding that claims of fraud and civil conspiracy against municipality are barred by the Tort Claims Act); see Sorbee Int'l Ltd. v. Chubb Custom Ins. Co., 1999 PA Super 178, ¶ 17 n.4 (explaining that "misappropriate" means to "appropriate to a bad, incorrect, or dishonest use," while "appropriate," in turn, means "to take improperly, as without permission" or "to take for one's own or exclusive use," meaning that misappropriation refers to a kind of "taking"); see also Riese v. QVC, Inc., No. CIV. A. 97-40068, 1999 WL 178545, at *4 (E.D. Pa. Mar. 30, 1999) (discussing the difference between the misappropriation of an idea and the independent creation of an idea).

Plaintiffs do not argue that the Tort Claims Act does not bar their intentional tort claims. Instead, they contend that their claims "also encompass negligence," and they argue that their claims, so understood, fall within the Tort Claims Act's waiver of immunity for negligent acts relating to the "care, custody or control of personal property." See Pls.' Br. Opp'n City Defs. Mot. Dismiss 13 & n.9. Alternatively, Plaintiffs request leave to amend their complaint, presumably to attempt to reframe their tort claims to sound in negligence, in the event that the Court rejects their position that their intentional tort claims also embrace claims of negligence. See id.

The allegations in Plaintiffs' Amended Complaint refer repeatedly and exclusively to intentional conduct, which prevents these allegations from being read to support liability under any theory of negligence. With respect to their claim of fraud, Plaintiffs allege that "Defendants misrepresented their true intentions with respect to their desire to fund and form partnerships"

with Plaintiffs, "stated that it was a 100% certainty that they and their organizations would partner" with Plaintiffs "while knowing such assurances were false," "were only interested in taking Mr. Smallwood's creation, the nonprofit . . . The Choice is Yours, and exploiting it for their own personal, political, and financial gains," and "intended to induce Mr. Smallwood to turn over [various] materials, and his knowledge of . . . The Choice is Yours, with their knowing misrepresentations." Am. Compl. ¶¶ 227-35. With respect to their claim of civil conspiracy, Plaintiffs allege that "Defendants acted in concert with malice to steal . . . The Choice is Yours's name and content," took "numerous and continuing overt and malicious acts in furtherance of their common purpose to steal the property rights" of Plaintiffs, and engaged in "conduct which is knowingly false and maliciously intended to harm Mr. Smallwood and . . . The Choice is Yours." See id. ¶¶ 250-52. Finally, with respect to their claim of misappropriation of ideas, Plaintiffs allege that, "[w]ith no authorization whatsoever from Plaintiffs, Defendants misappropriated Plaintiffs' ideas and property rights" and "acted maliciously, willfully, knowingly and with reckless disregard" of Plaintiffs' property rights. See id. ¶¶ 304-06. These allegations contend that Defendants' conduct was intentional, not negligent, and cannot be read to embrace any theory of liability for negligent conduct. See Zernhelt v. Lehigh Cnty. Office of Children & Youth Servs., 659 A.2d 89, 91 (Pa. Commw. Ct. 1995) ("Appellants attempted to overcome the immunity defense by recharacterizing the allegations in Count II of their complaint as constituting negligence rather than an intentional tort. . . . [T]his must be rejected."); Kearney v. City of Phila., 616 A.2d 72, 74 (Pa. Commw. Ct. 1992) (rejecting plaintiff's attempt to "recharacterize[] her claim of intentional infliction of emotional distress . . . as one of negligent infliction of emotional distress" because plaintiff's argument "conflict[ed] with the express wording of [her] amended complaint").

The Court, however, will afford Plaintiffs the opportunity to amend their Amended Complaint to assert claims sounding in negligence against the City of Philadelphia. While the applicability of the "personal property" exception to Plaintiffs' theory of this case is far from obvious, and the theory of negligence upon which Plaintiffs intend to rely equally so, "[l]eave to amend should be freely given," Free Speech Coal., Inc. v. Attorney Gen., 677 F.3d 519, 545 (3d Cir. 2012), and the Court will not deprive Plaintiffs of the opportunity to amend based on speculation about the nature of that amendment.

## VIII.   Defendants are entitled to the dismissal of Plaintiffs' demand for punitive damages against the City of Philadelphia and District Attorney Williams in his official capacity.

The City of Philadelphia and District Attorney Williams seek to dismiss Plaintiffs' demand for punitive damages for claims asserted against the City and District Attorney Williams in his official capacity.[6] Plaintiffs do not challenge Defendants' contention that municipalities, and municipal officers sued in their official capacities, are generally not liable under Pennsylvania law for punitive damages, under both the Tort Claims Act and the common law. See 42 Pa. Cons. Stat. Ann. § 8553(c) (enumerating the types of damages that may be recovered

---

[6]     Litigants have turned to both Rule 12(b)(6) and Rule 12(f) to challenge punitive damages demands. See, e.g., Cloyd v. Del. Cnty., No. 14-4833, 2015 WL 1312524, at *1 (E.D. Pa. Mar. 23, 2015) (moving to strike); Brooks v. Valley Day Sch., No. 14-5506, 2015 WL 3444279, at *4 (E.D. Pa. May 28, 2015) (moving to dismiss). Moving to dismiss the demand under Rule 12(b)(6) strikes this Court as the appropriate procedural mechanism in light of the judicially-crafted standards that guide the application of each Rule. Frequently repeated are the admonitions that motions to strike pursuant to Rule 12(f) are "disfavored," infrequently granted," and "drastic." See, e.g., Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013); Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd., 647 F.2d 200, 201 & n.1 (D.C. Cir. 1981) (per curiam); Anderson v. Sprint Nextel Corp., No. 15-3672, 2015 WL 5144186, at *3 (E.D. Pa. Aug. 31, 2015). These standards do not appear to set the proper tone for an inquiry into the propriety of a punitive damage demand, which requires the Court to assess whether the plaintiff's allegations, and the cognizable claims that arise from them, could support a punitive damage award. Rather, the standards that guide the inquiry into the sufficiency of a claim more aptly describe the process of assessing the viability of a punitive damages demand. See Boring v. Google Inc., 362 F. App'x 273, 283 (3d Cir. 2010) (citing Twombly and Iqbal to affirm a district court's dismissal of a demand for punitive damages, reasoning that, "under the pleading standards we are bound to apply, there is simply no foundation in the complaint for a demand for punitive damages"). Not all courts agree, however. See, e.g., BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (applying the Rule 12(f) standard, including a reference to the "extreme and disfavored" nature of the measure, to affirm a district court's decision to strike a prayer for punitive damages).

from a municipality); <u>Torres v. Allentown Police Dep't</u>, No. 13-3066, 2014 WL 4081477, at *11 (E.D. Pa. Aug. 18, 2014) (dismissing state law claims for punitive damages against police officers in their official capacities); <u>Momot v. City of Phila.</u>, No. 11-cv-7806, 2012 WL 1758630, at *6 (E.D. Pa. May 16, 2012) (citing 42 Pa. Cons. Stat. Ann. § 8553(c)) ("[U]nder the [Political Subdivision Tort Claims Act], a plaintiff may not recover punitive damages from a municipality."); <u>Bensalem Twp. v. Press</u>, 501 A.2d 331, 249 (Pa. Commw. Ct. 1985) (holding that a township "in its own right is not liable for punitive damages"); <u>Feingold v. Se. Pa. Transp. Auth.</u>, 488 A.2d 284, 293 (Pa. Super. Ct. 1985) (observing that "the general rule, as stated by [the Pennsylvania] Supreme Court as long ago as 1847, is that punitive damages are not recoverable against a municipality").

Instead, Plaintiffs contend only that Plaintiffs may seek punitive damages for their trademark infringement and unfair competition claims under the federal Lanham Act. However, while the Lanham Act permits the award of treble damages, punitive damages are not available.[7] <u>See</u> <u>Caesars World, Inc. v. Venus Lounge, Inc.</u>, 520 F.2d 269, 274-75 (3d Cir. 1975); <u>Sweetzel, Inc. v. Hawk Hill Cookies, Inc.</u>, No. CIV.A. 95-2632, 1996 WL 355357, at *3 (E.D. Pa. June 19, 1996) ("Damage awards under the Lanham Act are intended to be compensatory, not punitive." (citing <u>Sands, Taylor & Wood v. Quaker Oats, Co.</u>, 34 F.3d 1340, 1347-50 (7th Cir. 1994))); J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 30.97 (4th ed. database updated September 2015) ("[T]he courts have held that punitive damages are not recoverable in cases brought under the federal Lanham Act.").

---

[7]     Plaintiffs' demand for relief seeks, separately, "[t]reble damages on all Trademark claims as appropriate" and "[p]unitive damages on all causes of action (excluding Breach of Contract) to punish the Defendants for their outrageous and duplicitous conduct, especially those Defendants who are elected public officials; public Officers; and public Organizations." <u>See</u> Am. Compl. at 64. Defendants challenge only Plaintiffs' demand for punitive damages, and the Court expresses no opinion on the viability of Plaintiffs' demand for treble damages against any Defendants to this action.

Accordingly, Defendants' motions to dismiss Plaintiffs' claims for punitive damages for claims asserted against the City of Philadelphia and District Attorney Williams, in his official capacity, are granted.[8]

## IX.   Defendants are entitled to the dismissal of Plaintiffs' civil RICO claims against the City of Philadelphia and District Attorney Williams in his official capacity.

Defendants contend that Plaintiffs' civil RICO claims asserted against the City of Philadelphia and District Attorney Williams in his official capacity should be dismissed because civil RICO claims cannot be maintained against municipalities. Defendants point to a 1991 decision of the Court of Appeals for the Third Circuit, which held that "a civil claim brought under section 1964(c) of the RICO Act, with its mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation." See Genty v. Resolution Tr. Corp., 937 F.2d 899, 914 (3d Cir. 1991). The Genty court reasoned that it "perceive[d] no intention of Congress to abrogate the long-established and salutary principle of common law prohibiting punitive damages against municipalities." See id. Plaintiffs contend that, soon after the Genty decision, "Congress . . . eliminated the prohibition of imposing

---

[8]     Plaintiffs contend that punitive damages "against governmental units such as . . . the City of Philadelphia" and the "DA Defendants" are authorized by 15 U.S.C. § 1122. See Pls.' Br. Opp'n City Defs.' Mot. Dismiss 9. But § 1122, which was amended in 1992 in an ill-fated attempt to waive the states' sovereign immunity to Lanham Act claims, does not itself provide for or authorize any particular remedies. Section 1122 merely makes reference to remedies that are available elsewhere under the Lanham Act, and as the Court has already observed, those remedies do not include punitive damages. See 15 U.S.C. § 1122(c).

        Section 1122 also has no applicability to municipalities. The portion of the statute in question attempted to waive the states' Eleventh Amendment immunity for Lanham Act claims, and was therefore concerned with claims brought against "[a]ny State, instrumentality of a State or any office or employee of a State or instrumentality of a State acting in his or her official capacity," not claims against municipalities and their officers, such as the City of Philadelphia and District Attorney Williams. See 15 U.S.C. § 1122(b). Municipalities are not the beneficiaries of Eleventh Amendment immunity and thus have no Eleventh Amendment immunity that the statute could have waived. See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1979) (observing that "the Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities").

        Section 1122's waiver of state sovereign immunity appears to have no continuing viability. A trilogy of decisions from the Supreme Court in 1999 effectively struck down § 1122's waiver of sovereign immunity as an unconstitutional abrogation of the immunity conferred on the states by the Eleventh Amendment. See Bd. of Regents v. Phx. Int'l Software, Inc., 653 F.3d 448, 458 (7th Cir. 2011) (observing that "these decisions appear to foreclose any argument that Congress has properly abrogated" state sovereign immunity to liability in trademark actions); McCarthy, supra, at § 25:66.

punitive damages against political subdivisions." Therefore, Plaintiffs argue that "the Third

Circuit's reasoning in Genty . . . is stale and has been superseded," and that this Court should

decline to follow the square holding of that decision.[9] See Pls.' Br. Opp'n District Attorney

Defs.' Mot. Dismiss 13-16; Pls.' Br. Opp'n City Defs.' Mot. Dismiss 10-12.

      The act of Congress in question is the enactment of amendments to the United States

Sentencing Commission Guidelines Manual that took effect in November 1991.[10] These

amendments added provisions to the sentencing guidelines to govern the sentencing of

organizations that are convicted of crimes. See Diana E. Murphy, The Federal Sentencing

Guidelines for Organizations: A Decade of Promoting Compliance and Ethics, 87 Iowa L. Rev.

697, 699-702 (2002). Prior to these amendments, the federal sentencing guidelines only applied

to individual offenders. Id. at 699-700. Plaintiffs reason that, because the organizational

sentencing guidelines apply to "governments and political subdivisions thereof" and permit fines

to be imposed in criminal cases against organizations, including cases involving criminal RICO

convictions, these additions to the sentencing guidelines "reflect that it is very much Congress's

intent that political subdivisions be subjected to punitive measures for the acts of their agents."

See U.S. Sentencing Guidelines Manual § 8A1.1 cmt. n.1, 8C2.1 (U.S. Sentencing Comm'n

2014); Pls.' Br. Opp'n District Attorney Defs.' Mot. Dismiss 14-15; Pls.' Br. Opp'n City Defs.'

Mot. Dismiss 11.

      As an initial matter, Plaintiffs' arguments face a nearly overwhelming weight of

authority. In the time since the 1991 sentencing guidelines amendments, which Plaintiffs argue

---

[9]     "[D]istrict courts and other inferior courts are bound by decisions of the Court of Appeals in the appropriate circuit unless overruled by an intervening Supreme Court decision or other change in law." United States v. Moreno, No. S3 94 CR. 0165, 2000 WL 1843232, at *5 (S.D.N.Y. Dec. 14, 2000) (Sotomayor, J.) (citing Ithaca Coll. v. NLRB, 623 F.2d 224, 228 (2d Cir. 1980)).

[10]    Amendments to the sentencing guidelines are promulgated by the U.S. Sentencing Commission and take effect unless Congress acts to revise or modify them. See 28 U.S.C. § 994(p).

abrogated the <u>Genty</u> decision, the Third Circuit has reaffirmed the continuing vitality of <u>Genty</u> at least three times, albeit in unpublished opinions. <u>See</u> <u>Tengood v. City of Phila.</u>, 529 F. App'x 204, 209 (3d Cir. 2013) (holding that plaintiff's attempt to assert civil RICO claims against the City of Philadelphia was "foreclosed by our decision in <u>Genty</u> . . . , in which we held that a civil RICO claim 'cannot be maintained against a municipal corporation'" (quoting <u>Genty</u>, 937 F.2d at 914)); <u>Heinemeyer v. Twp. of Scotch Plains</u>, 198 F. App'x 254, 255-56 (3d Cir. 2006) (holding that plaintiff's "RICO claim against defendants fails as a matter of law" because "Defendant Township . . . is a municipal corporation and is thus immune to RICO claims" (citing <u>Genty</u>, 937 F.2d at 914)); <u>Kadonsky v. New Jersey</u>, 188 F. App'x 81, 84-85 (3d Cir. 2006) ("The RICO and NJRICO claims against Somerset and Hunterdon counties and their respective County Prosecutor Officers are barred because municipal entities are immune from suit under applicable federal and state law." (citing <u>Genty</u>, 937 F.2d at 914)). At least three other circuits have held, in decisions rendered after the 1991 sentencing guideline amendments, that civil RICO claims cannot be brought against municipalities. <u>See</u> <u>Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.</u>, 786 F.3d 400, 411-13 (5th Cir. 2015) ("[M]unicipal entities enjoy common law immunity from punitive damages, and, whatever else it is, RICO's treble-damages provision is at least partially punitive." (citing <u>Genty</u>, 937 F.2d at 908)); <u>Rogers v. City of New York</u>, 359 F. App'x 201, 204 (2d Cir. 2009); <u>Pedrina v. Chun</u>, 97 F.3d 1296, 1300 (9th Cir. 1996) ("We summarily reject the tenants' RICO claims against the city."). Numerous courts in this district have applied <u>Genty</u> to hold the same.[11]

---

[11]    <u>See, e.g.</u>, <u>Safa v. City of Phila.</u>, No. 13-5007, 2014 WL 535259, at *4 (E.D. Pa. Feb. 11, 2014); <u>In re Olick</u>, No. 10-7492, 2011 WL 5075104, at *9 (E.D. Pa. Oct. 26, 2011); <u>Manuel v. City of Phila.</u>, No. 10-2690, 2010 WL 3566767, at *8 (E.D. Pa. Sept. 14, 2010); <u>Bane v. City of Phila.</u>, No. 09-2798, 2009 WL 6614992, at *13 n.9 (E.D. Pa. June 18, 2009); <u>Kovalev v. City of Phila.</u>, No. 07-4875, 2008 WL 5377625, at *7 (E.D. Pa. Dec. 23, 2008); <u>Pascocciello v. Interboro Sch. Dist.</u>, No. 05-5039, 2006 WL 1284964, at *7 (E.D. Pa. May 8, 2006).

Taken to its logical conclusion, Plaintiffs' reasoning would also more generally call into question the continuing vitality of the common law doctrine that municipalities cannot be subjected to punitive damages. Indeed, Plaintiffs expressly contend that, because the sentencing guidelines permit criminal fines to be imposed on governments and their political subdivisions, "Congress has eliminated the prohibition of imposing punitive damages against political subdivisions." But this breathtaking assertion—that amendments to the criminal sentencing guidelines were intended to abrogate municipalities' common law immunity to punitive damages in civil suits, an immunity doctrine supported by an "overwhelming mass of historical and legal precedent," see Genty, 937 F.2d at 912—cannot be squared with the fact that the Supreme Court, and numerous circuits, have reaffirmed, more recently than 1991, that "municipalities' common law resistance to punitive damages still obtains." See Cook Cnty. v. U.S. ex rel. Chandler, 538 U.S. 119, 130 (2003); see, e.g., Flythe v. Dist. of Columbia, 791 F.3d 13, 23 (D.C. Cir. 2015) ("As a general rule there can be no recovery of punitive damages against a municipality absent a statue expressly authorizing it."); U.S. ex rel. Chandler v. Cook Cnty., 277 F.3d 969, 979 (7th Cir. 2002) (recognizing "the presumption against the imposition of punitive damages on municipalities"); Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 254 (2d Cir. 2005) (quoting Cook County, 538 U.S. at 129)); Potence v. Hazelton Area Sch. Dist., 357 F.3d 366, 372 (3d Cir. 2004) (quoting Cook County, 538 U.S. at 129)). Thus, for municipalities, the general rule remains that "no punitive damages are allowed unless expressly authorized by statute," see Cook County, 538 U.S. at 130 (2003) (quoting City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 260 n.21 (1981)), and Plaintiffs cite to no case that has interpreted the amendments to the federal sentencing guidelines to have done away with that general rule.

Setting aside the weight of authority to the contrary, Plaintiffs' arguments also rest on two faulty premises. The first is that the sentencing guideline amendments effected a change in the law so as to "supersede" <u>Genty</u>. Plaintiffs contend that, "[i]n November 1991, the Federal Sentencing Commission changed the [sentencing guidelines] to allow for political subdivisions to be held liable for the acts of their agents under federal criminal law."[12] Put differently, Plaintiffs' contention is that, prior to the amendments to the sentencing guidelines, political subdivisions could not be held criminally liable (or at least could not be punished by the imposition of fines), and that the amendments to the sentencing guidelines therefore effected a substantive change in the application of criminal law to municipalities so as to require a reevaluation of the reasoning of <u>Genty</u>.

As <u>Genty</u> itself recognized, however, "at common law most jurisdictions held municipal corporations acting in a proprietary fashion liable for the wrongs of their agents and officers, with the exception that, absent express statutory authorization, the common law ordinarily did not allow criminal indictments against municipal corporations for certain serious offenses." <u>See</u> 937 F.2d at 909 (citing 17 Eugene McQuillin, <u>The Law of Municipal Corporations</u> § 49.88 (3d ed.)). Long before the sentencing guidelines were amended to provide guidance on the appropriate punishment to impose on organizational defendants, municipalities had been subjected to criminal prosecution and criminal fines. <u>See</u> Stuart P. Green, <u>The Criminal Prosecution of Local Governments</u>, 72 N.C. L. Rev. 1197, 1201-07 (1994); <u>see, e.g.</u>, <u>Pennsylvania v. Fleetwood Borough Auth.</u>, 346 A.2d 867, 868-69 (Pa. Commw. Ct. 1975) (affirming the criminal conviction and fine imposed on a borough authority for violations of state environmental law); <u>People v. City of Chi.</u>, 100 N.E. 194, 196-97 (Ill. 1912) (affirming the imposition of criminal fines on the City of Chicago after being found guilty at trial of violating

---

[12]     Pls.' Br. Opp'n District Attorney Defs.' Mot. Dismiss 14; Pls.' Br. Opp'n City Defs.' Mot. Dismiss 11.

state law and recognizing that the "weight of authority" provided that a municipal corporation may be prosecuted criminally); see also Cook County, 538 U.S. at 128 (recognizing that "it has not been regarded as anomalous to require compliance by municipalities with the substantive standards of . . . federal laws which impose [both civil and criminal] sanctions upon 'persons.'" (quoting City of Lafayette v. La. Power & Light Co., 435 U.S. 389, 400 (1978))). The Genty decision was written against this historical backdrop, and the amendments to the sentencing guidelines that arrived after Genty did not create any new form of criminal liability[13] or criminal punishment for municipalities that did not already exist at the time of that decision.

The second of Plaintiffs' faulty premises is the false equivalence Plaintiffs draw between the imposition of criminal fines on municipalities and the imposition of punitive damages against municipalities in civil suits. While punitive damages "have been described as 'quasi-criminal,'" see Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 432 (2001) (quoting Pacific Mut. Life Ins. v. Haslip, 499 U.S. 1, 19 (1991)), the two are viewed differently; indeed, municipalities had been subjected to criminal prosecution and fines while being considered immune to civil suits for damages. See Green, supra, at 1207-08 (suggesting that municipal immunity to tort suits may have been significantly influenced by the recognition that municipalities would remain susceptible to criminal prosecution). Genty itself suggested that there may sound reasons for imposing criminal liability on municipalities for RICO violations, while nonetheless concluding that municipalities cannot be subjected to civil RICO suits. See

---

[13]    Nor could they. The U.S. Sentencing Commission's statutory mandate is to promulgate guidelines "for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. § 994(a)(1). The role of the Commission, and the guidelines it promulgates, is to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities . . . [and] maintaining sufficient flexibility to permit individualized sentences when warranted." See United States v. Booker, 543 U.S. 220, 264 (2005) (quoting 28 U.S.C. § 991(b)(1)(B)). To the extent that Plaintiffs believe that the 1991 amendments to the sentencing guidelines had the effect of "allow[ing] for political subdivisions to be held liable for the acts of their agents under federal criminal law," see Pls.' Br. Opp'n District Attorney Defs.' Mot. Dismiss 14; Pls.' Br. Opp'n City Defs.' Mot. Dismiss 11, Plaintiffs misapprehend the role of the sentencing guidelines.

937 F.3d at 907-10 & n.6 (observing that there are "situations where municipal corporations are indeed held liable for the tortious or criminal acts of its officials, even where such acts require a malicious, willful or criminal intent," but noting that that case did not "raise the question of indictment and criminal liability under section 1963 of RICO").

There is also frequently a difference in magnitude between criminal fines and punitive damage awards in civil suits. See City of Lafayette, 435 U.S. at 442 n.1 (Blackmun, J., dissenting) (contrasting the magnitude of various civil and criminal penalties that have been imposed on municipalities with the magnitude of a treble damage award under the antitrust laws); In re Exxon Valdez, 270 F.3d 1215, 1245 (9th Cir. 2001) (rejecting a proposed punitive damage award in part because, under one measure, the award would have been twenty-five thousand times greater than the applicable criminal fine); Green, supra, at 1241 (suggesting that there is little "indication that criminal fines would hurt a municipality as much as the imposition of punitive damages, a burden that the Supreme Court has called 'unmanageable'" (quoting City of Newport, 453 U.S. at 265)). While the imposition of criminal fines upon a municipality may not pose an existential threat to the municipality's viability, the impact of a punitive damage award "is likely to be both unpredictable and, at times, substantial" and may place a "strain on local treasuries and therefore on services available to the public at large." See City of Newport, 453 U.S. at 247; City of Lafayette, 435 U.S. at 442-43 ("It is a grave act to make governmental units potentially liable for massive treble damages when, however 'proprietary' some of their activities may seem, they have fundamental responsibilities to their citizens for the provision of life-sustaining services such as police and fire protection."). The fact that the sentencing guidelines contemplate subjecting a municipality to criminal fines under appropriate

circumstances does not compel the conclusion that municipalities should also be subjected to "civil RICO's powerful treble damages provision." See Genty, 937 F.2d at 910.[14]

In sum, the 1991 amendments to the sentencing guidelines do not disturb the reasoning of Genty. The guidelines merely recognize the possibility that, in appropriate circumstances, a government or political subdivision may be convicted of a crime and punished by the imposition of a criminal fine. "[T]he general rule today is that no punitive damages are allowed unless expressly authorized by statute." Cook County, 538 U.S. at 129 (quoting City of Newport, 453 U.S. at 260 n.21); see Genty, 937 F.2d at 914 ("Courts will not interpret statutes to overturn well-established common law principles unless Congress so authorizes." (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989))). The amendments to the sentencing guidelines fall well short of that express authorization, and Plaintiffs' position would require the rejection of a great weight of authority to the contrary. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' civil RICO claims against the City of Philadelphia and District Attorney Williams in his official capacity.

---

[14]     In addition, the organizational sentencing guidelines provide that, in calculating the amount of any criminal fine to be imposed, "[i]f the organization is a public entity, a downward departure may be warranted." U.S. Sentencing Guidelines Manual § 8C4.7. By contrast, "[i]t is clear that trial courts and juries are at no liberty under RICO to award any amount less than treble damages." Genty, 937 F.2d at 914.

**X.      Conclusion**

For the foregoing reasons, the respective motions of the District Attorney Defendants and the City Defendants are granted. An appropriate order follows.

BY THE COURT:


_/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge